# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

MAY 2 3 2003

U.S DISTRICT COURT
MARTINSBURG, WV 25401

| | |
|---|---|
| HAWEY A. WELLS, JR.<br>853 Comstock Road<br>Shepherdstown, WV 25443 | )<br>)<br>) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 3:03CV38 |
| | ) |
| ANTHONY J. PRINCIPI, SECRETARY,<br>DEPARTMENT OF VETERANS AFFAIRS, | )<br>) |
| | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
### (Age, Sex, Reprisal)

### Nature of the Claim

This is an action arising for certain acts, practices and courses of conduct resulting in discrimination in employment against the Plaintiff, Hawey Wells, Jr. on the basis of age (DOB: 2/26/36) and retaliation for his prior Equal Employment Opportunity ("EEO") activity in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq*. (hereinafter "ADEA"); on the basis of sex (male) and retaliation for his prior EEO activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16, and as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (hereinafter collectively referred to as "Title VII").

## Jurisdiction and Venue

1.      This Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 626(c) and

633a(c), 42 U.S.C. §§ 2000e-5(f) and 16(c), and 28 U.S.C. §§ 1331 and 1343(a).

2.      Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) as a

substantial part of the events complained of herein took place in Martinsburg, West

Virginia within the jurisdiction of the United States District Court for the Northern

District of West Virginia.

## Parties

3.      Hawey A. Wells, Jr. (hereinafter "Plaintiff") is a male citizen of the United States,

born on February 26, 1936 and is an employee of the United States Department of

Veteran Affairs (hereinafter "Defendant").

4.      Anthony J. Principi (hereinafter "Defendant") is the Secretary, United States

Department of Veterans Affairs.  As Secretary of the Department of Veteran Affairs,

Defendant is responsible for the employment practices and procedures within the

Department, and is named in his official capacity, pursuant to 42 U.S.C. § 2000e-16(c).

## **Procedural History**

5.     Complainant filed his first formal complaint of discrimination on or about

November 5, 1999, identified as Agency Case Number 99-5348 ("First Complaint"), on

the basis of sex (male) and age (DOB: 2/26/36).  Equal Employment Opportunity

Commission ("EEOC" or "Commission") Administrative Judge Francis A. Polito

subsequently issued a Dismissal Order on June 27, 2001 regarding this case for reasons

not related to the substance of Plaintiff's allegations/claims.  Defendant then issued a

Final Agency Decision ("FAD") dated August 16, 2001 finding no discrimination.

Plaintiff then timely appealed the FAD to the EEOC, Office of Federal Operations

("OFO").  By decision dated February 26, 2003, which Plaintiff received on or about

February 28, 2003, EEOC OFO affirmed the FAD.  Thus, Plaintiff is timely filing this

action regarding the First Complaint, as advised in the EEOC OFO decision, pursuant to

29 C.F.R. § 1614.407(d) ("within 90 days of receipt of the Commission's final decision

on an appeal.").

6.     On or about February 22, 2002, Plaintiff filed a second formal complaint of

discrimination, identified as Agency Case Number 2004-0613-2002101715 ("Second

Complaint") on the basis of sex (male), age (DOB: 2/26/03), and reprisal for prior EEO

activity.  Plaintiff has not yet received the investigative file, thus Defendant has failed to

timely complete its investigation within 180 days of the date of the filing of this

complaint as required by 29 C.F.R. § 1614.108(e).  Plaintiff now desires to file a civil

action on the second formal complaint, and is thus now timely filing this action pursuant to 29 C.F.R. 1614.407(b), as 180 days have passed since the filing of his formal complaint, no appeal has been filed and no final action has been taken.

## Factual Allegations

7.      At all times relevant to this complaint, Plaintiff was employed by the Defendant as a Physician and Staff Psychiatrist at the Defendant's VA Medical Center in Martinsburg, West Virginia.

8.      Plaintiff is a physician with Board Certification by the American Society of Addiction Medicine, the American Society of Clinical Pathology, and the American College of Pathology.

9.      Prior to being hired by Defendant, Plaintiff directed a private substance abuse treatment center for several years.

10.     Plaintiff was hired by Defendant to serve as Staff Psychiatrist and Assistant Medical Director of the Alcohol and Drug Treatment Unit, VA Medical Center, in Martinsburg, West Virginia, on or about January 19, 1993.

11.     Plaintiff suffers from hip, back and foot problems on his left side that limit his ability to walk.

12.     Beginning on or about June 30, 1999, Plaintiff began to be subjected to discriminatory and/or retaliatory treatment by Defendant.

-4-

13.     In about July, 1999, Mr. Paul Smits, a social worker and a non-physician, took over the substance abuse program at Defendant's Martinsburg West Virginia facility, and assumed supervisory responsibilities over Plaintiff, as Facility Service Line Manager.

14.     On or about September 10, 1999, Plaintiff was informed that his immediate supervisor, who was a Medical Doctor and psychiatrist, would no longer be his (Plaintiff's) supervisor. Plaintiff was also informed at this time that he (Plaintiff) and the wards and clinics assigned to him would be supervised by a significantly younger psychologist (Michael McCarty) who had no previous experience with, or the qualifications to supervise, acute medical wards, medical clinics, physicians or physician assistants.

15.     Plaintiff's level of duties and responsibilities were significantly reduced or eliminated in the substance treatment abuse program.

16.     The systematic reduction in Plaintiff's duties and responsibilities caused him to cease performing the duties of a Staff Psychiatrist and assume the duties of a Domiciliary Physician.

17.     The removal of Plaintiff's psychiatrist supervisor from most of his substance abuse duties left Plaintiff and two physicians assistants to provide medical care for the patients on the acute detoxification ward, certain acute dual diagnosis psychiatric patients, a busy dual diagnosis out-patient clinic, the aftercare medical ward and the 70 bed residential treatment unit.  This removal of Plaintiff's psychiatrist supervisor from

most of his substance abuse duties occurred at a time when the patient load was increasing.

18.    Plaintiff's duties were systematically reduced by Defendant until Plaintiff was essentially performing the duties of a Physician's Assistant, *e.g.,* admissions and discharges.

19.    Because of Plaintiff's psychologist supervisor's decisions and inexperience in scheduling and providing backup care, patients were regularly left without coverage by a physician or a physician assistant. As a result of this situation, Plaintiff was often faced with the choice of working late to provide adequate care to the patients (which was difficult for Plaintiff at his age), or leaving at his scheduled time, thus leaving the patients without such care.

20.    Plaintiff was required to devote approximately one hour each day to the dictation of charts and another hour for workload recording. The schedule given Plaintiff by his psychologist supervisor did not leave Plaintiff time to accomplish both tasks.

21.    The schedule given Plaintiff by his psychologist supervisor did not leave Plaintiff time to adequately review the work of the physician's assistants. Proper review of physicians assistants' work is a professional and ethical requirement for physicians supervising physicians assistants.

22.    Plaintiff was subjected to numerous insults and acts of harassment, beginning in or about June 30, 1999, including but not limited to:

a.      Plaintiff was admonished for being Absent Without Leave ("AWOL"),

despite the fact that Plaintiff's leave request had been filed in a timely and

proper manner, but simply not read by Plaintiff's psychologist supervisor.

b.      Plaintiff's psychologist supervisor relocated Plaintiff's office three times in

an approximately three-month period.

c.      Plaintiff's psychologist supervisor denied Plaintiff a PC (personal

computer), but did assign PC's to personnel junior to and significantly

younger than Plaintiff, such as the Physician Assistants.

d.      Plaintiff was forced to resign all of his activities for the Education

Department.

e.      Plaintiff was forced to resign from organizing the Grand Rounds.

f.      Plaintiff was forced to stop going to the Budget Committee.

g.      The scheduling imposed on Plaintiff required him to cease his activities

with the Research and Development Committee.

h.      Plaintiff, a full time employee, was moved out of his office into a smaller

office that was inadequate for his needs, and Plaintiff's old, larger office

was assigned to a female, part-time employee. The Clinical Coordinator of

the Mental Health Service Line, Michelle Cooke, (younger, female) made

this decision.

    i.      Plaintiff has been subjected to threats of a "professional review" of his medical charts, allegedly because they were "not up to date".

    j.      Defendant designed Plaintiff's schedule such that Plaintiff was required to walk back and forth extensively between units to care for his patients. Defendant was aware of Defendant's physical limitations in walking, and that this walking was also difficult for Plaintiff due to his age.  Plaintiff asserts that this was done deliberately in order to harass him into resigning from Defendant's employ, as Defendant wants Plaintiff to leave because of his age.  Defendant also failed to relocate these facilities in a manner that would have provided more efficient medical care for patients and more efficient use of Plaintiff's time until on or about December 17, 2001.

23.    The changes made by Defendant caused Plaintiff and two physicians assistants to assume a workload that had, for approximately the past 14-15 years, been performed by four people (including two psychiatrists). This was at a time when the number of admissions was increasing.

24.    The changes made by Defendant and Plaintiff's psychologist supervisor caused the standard of medical care to fail to meet the standard requirements of the practice of addiction medicine as specified by the American Society of Addiction Medicine.

25.    The changes made by Defendant and Plaintiff's psychologist supervisor were made in violation of Department of Veterans Affairs VHA's own Directive 99-030

"Authority for Mental Health Program Changes" dated June 30, 1999, as signed by Kenneth W. Kizer, M.D., M.P.H., Under Secretary for Health.

26.     On or about November 5, 1999 Plaintiff filed his first formal complaint of discrimination.  The EEO investigator did not interview any of Plaintiff's witnesses for the investigation.

27.     On or about June 27, 2001, the EEOC Administrative Judge assigned to the First Complaint dismissed Plaintiff's claims for reasons not related to the substance of Plaintiff's allegations/claims, and thus Plaintiff was denied an administrative hearing before the EEOC.

28.     In or about June 2001, Defendant learned that the Administrative Judge had dismissed Plaintiff's First Complaint.

29.     Starting soon after the dismissal of Plaintiff's First Complaint in June 2001, Defendant subjected Plaintiff to increased discrimination and retaliation.

30.     On or about July 5, 2001, the Facility Service Line Manager, Paul Smits, notified Plaintiff that his (Plaintiff's) privileges in psychiatry would be eliminated because Plaintiff had not completed a psychiatric residency, and because Plaintiff did not have his "boards". This action was taken despite the fact that:

      a.     Plaintiff had practiced Psychiatry with full privileges at the Martinsburg Veterans Affairs Medical Facility for 9½ years without complaints, adverse outcomes or any incident that would suggest that he was not qualified to

practice Psychiatry;

b.　　Plaintiff had training in Psychiatry while qualifying for additional American Society of Addiction Medicine boards;

c.　　Plaintiff had eight years of continuing medical education credits in psychiatry and weekly study of psychiatric abstracts;

d.　　Plaintiff had many independent study courses in psychiatry and was a prominent participant at the American Society of Addiction Medicine Conferences;

e.　　Plaintiff was the only physician at the Martinsburg facility in the American Society of Addiction Medicine, and is board certified in Addiction Medicine;

f.　　Plaintiff had been the Director of an addiction recovery center for several years prior to being hired by Defendant.

g.　　Defendant had originally hired Plaintiff as the Assistant Director of the Substance Abuse Unit at the Martinsburg facility;

h.　　Other Psychiatrists at the Defendant's Martinsburg facility who did not have their "boards" were allowed to continue practicing psychiatry. These other psychiatrists included Dr. B. Sombali and Dr. Ali Aschgar. These two psychiatrists are significantly younger than Plaintiff. In addition, Dr.

Shaukat Amanullah (younger, female), although not board certified, was

also allowed by Defendant to practice psychiatry.

31.     On or about September 6, 2001, Mr. Smits informed Plaintiff that he (Plaintiff)

would be removed from Acute Psychiatry. In a subsequent e-mail to the staff sent by Mr.

Richard Haber, the staff was informed that Plaintiff would no longer be taking general

psychiatric call, but that Plaintiff would be seeing only "detox" patients every four to five

weeks.

32.     On or about September 14, 2001, because Defendant was short staffed, Plaintiff

was again placed on the Acute Psychiatry staff and worked as a "Detox" Psychiatrist only

until about December 17, 2001, when Plaintiff was again removed from this position, his

psychiatric privileges were again removed and he was assigned to the "Dom"

(Domiciliary) Clinic.

33.     On or about October 1, 2001, Plaintiff was moved without prior notification to

another building by the Clinical Coordinator of the Mental Health Service Line, Michelle

Cook.

34.     On or about December 17, 2001, Mr. Smits reassigned Plaintiff to Internal

Medicine Services, despite that fact that Plaintiff has little or no training in Internal

Medicine and Plaintiff therefore feels that he is not competent to practice in the area of

Internal Medicine.  Defendant thus removed Plaintiff from duties for which he had

significant training, experience and board certification, allegedly because Plaintiff lacked

the proper professional qualifications for these duties, yet then assigned Plaintiff duties

for which he did not have sufficient professional qualifications, training, or board

certification to render the appropriate level of patient care.

35.     On or about January 2, 2002, Plaintiff was assigned the duty and responsibility to

perform preliminary work, *e.g.*, patient "work-ups", taking patients' vital signs and blood

pressure, etc., previously performed by two nurses when these two nurses were

reassigned other duties. Additional patients were also assigned to Plaintiff's

responsibility.  These actions were ordered by Michelle Cooke, despite the fact that she

knew that this change in duties would adversely affect Plaintiff's ability to render care to

his patients and her knowing that Plaintiff was already short staffed. Plaintiff was the

only staff physician from whom nurses were removed.  Plaintiff believes that these two

nurses were reassigned to make his working conditions so difficult that he would resign.

36.     On or about January 29, 2002, Plaintiff's office, including but not limited to his

desk contents and files, was packed and moved to another location without his prior

knowledge, consent or participation. During this move, Plaintiff's desk drawers were

emptied and boxes dumped at the new location. The person responsible for this action

was Ms. Cooke. This was the third occasion on which such a move had been made.

Plaintiff was the only physician whose office was moved in such a manner. The office to

which he was moved was approximately one-half mile away, and Plaintiff had to have

lifts put in his shoes and use a cane to negotiate this distance in the course of his duties, which required him to walk back and forth two to three times a day.

37.   On or about February 8, 2002, Plaintiff received a negative performance review and was informed that he was not competent to cover the "Detox" ward.  At about this time, Plaintiff's staff was further reduced.

38.   In addition, during the period from June 2001 through the present, Plaintiff has been subjected to, *inter alia,* the following discriminatory/retaliatory acts:

a.   Defendant hired a less qualified, significantly younger female psychiatrist, Dr. Amanullah Shaukat, and another significantly younger psychiatrist, Dr. Khusro Arastu, to perform duties previously performed solely by Plaintiff. Neither of these two individual was board certified in Addiction Medicine.

b.   Plaintiff was wrongly accused of being AWOL from his duties.

c.   Plaintiff was wrongly accused of a violation of the Hatch Act.

d.   Defendant had failed to properly record and document the workload assigned to Plaintiff, recording approximately 123 patients assigned to Plaintiff when, in fact, the correct number was in the range of approximately 2500 to 3000 patients!

e.   Ms. Cooke fails to communicate with Plaintiff except by e-mail, and she monitors Plaintiff's work activity by questioning female nurses and female assistants.  Ms. Cooke does not treat Dr. Grace Santos (younger, female),

who was assigned to the same clinic as Plaintiff, in the same manner as she

treats Plaintiff.

f.    Ms. Cooke treated younger, female employees better than she treated

Plaintiff in that these younger females were, *inter alia*, not overworked, not

subjected to a hostile work environment, did not have their offices changes,

were not improperly accused of being AWOL, did not have their workload

improperly recorded and, Ms. Cooke communicated directly with these

women.

39.    Plaintiff believes that Defendant believes that he is too old to perform the work

that is expected of him.  Plaintiff's belief here is supported by remarks made by Dr.

Stephen Deutsch, a psychiatrist in Washington, D.C. who is the Mental Health Service

Line Director in the Washington, D.C. VA Medical Center and Mr. Smits' supervisor.

Dr. Deutsch told Ms. Smits that we have to "get rid of some low hanging fruit", meaning

Plaintiff and another older man, Dr. S. Kodali, who was subsequently forced out.

40.    On or about February 22, 2002, Plaintiff filed a formal complaint of

discrimination ("Second Complaint") relating to the discrimination and retaliation to

which he had been subjected.

41.    As a direct result of Defendant's actions, Plaintiff has suffered physical, emotional

and economic damages, including but not limited to: emotional and physical pain and

suffering, stress, aggravation, anxiety, depression, hypertension (for which he has been

prescribed anti-hypertensive medication), a weight gain of approximately 50 pounds, reduced ability to exercise, insomnia, and personal and professional humiliation. Defendant's actions have also placed Plaintiff in an extremely vulnerable position, as he may lose his license to practice medicine because he has had his psychiatry privileges revoked, and his name may be placed on a national register which lists doctors whose privileges have been revoked, thus making it almost impossible for him to obtain employment as a physician.

### COUNT ONE

### DISCRIMINATION BASED ON AGE IN
### VIOLATION OF THE ADEA-DISPARATE TREATMENT

42.   Plaintiff adopts and incorporates by reference paragraphs 1 through 41, above.

43.   At all times relevant to this complaint, Plaintiff was at least age 40.

44.   Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his age (DOB: 2/26/36), as described in ¶¶ 7 through 40, above.

45.   Similarly situated persons younger than Plaintiff and/or persons younger than age 40 were not so treated.

46.   As a direct result, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT TWO

### DISCRIMINATION BASED ON AGE IN
### VIOLATION OF THE ADEA- HOSTILE ENVIRONMENT

47.     Plaintiff adopts and incorporates by reference paragraphs 1 through 46, above.

48.     At all times relevant to this complaint, Plaintiff was at least age 40.

49.     Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully

discriminated against him on the basis of his age (DOB: 2/26/36), by creating,

maintaining and subjecting Plaintiff to harassment and a hostile work environment as

described, *inter alia*, in ¶¶ 7 through 40, above.

50.     As a direct result, Plaintiff suffered the damages as described in ¶ 41 above.


## COUNT THREE

### DISCRIMINATION BASED ON SEX IN
### VIOLATION OF TITLE VII - DISPARATE TREATMENT

51.     Plaintiff adopts and incorporates by reference paragraphs 1 through 50, above.

52.     Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully

discriminated against him on account of his sex, male, as described in ¶¶ 7 through 40,

above.

53.     Similarly situated females were not so treated.

54.     As a direct result of these actions by Defendant, Plaintiff suffered the damages as

described in ¶ 41 above.

## COUNT FOUR

## DISCRIMINATION BASED ON SEX IN
## VIOLATION OF TITLE VII - HOSTILE ENVIRONMENT

55.    Plaintiff adopts and incorporates by reference paragraphs 1 through 54, above.

56.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully

discriminated against him on account of his sex, male, by creating, maintaining and

subjecting Plaintiff to harassment and a hostile work environment as described,  *inter*

*alia*, in ¶¶ 7 through 40, above.

57.    As a direct result of these actions by the Defendant, Plaintiff suffered the damages

as described in ¶ 41 of this complaint.

## COUNT FIVE

## RETALIATION IN VIOLATION
## OF THE ADEA AND TITLE VII

58.    Plaintiff adopts and incorporates by reference paragraphs 1 through 57, above.

59.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully

discriminated/retaliated against him on account of his participation in the protected Equal

Employment Opportunity process, including his filing a formal complaint of

discrimination on or about November 5, 1999, by subjecting him to disparate treatment,

as described, *inter alia*, above.

60.    Plaintiff alleges that Defendant also willfully, intentionally, maliciously and

unlawfully discriminated/retaliated against him on account of his protected participation in the Equal Employment Opportunity process, including his filing a formal complaint of discrimination on or about November 5, 1999, by creating, maintaining and subjecting him to continual harassment and a hostile work environment.

61.    As a direct result of these actions by Defendant, Plaintiff suffered the damages as described in ¶ 41 of this complaint.

WHEREFORE, Plaintiff Hawey A. Wells Jr., respectfully prays for the following relief:

a.    That this Court enter a declaratory judgment that Defendant's actions violated the rights of Plaintiff by discriminating and retaliating against him in violation of the ADEA and Title VII.

b.    That Defendant be ordered to pay Plaintiff the sum of Three Hundred Thousand Dollars ($300,000.00) in compensation for the pain and suffering and for the other nonpecuniary loses that Defendant caused him by discriminating and retaliating against him.

c.    That Defendant be ordered to cease and desist all further discrimination and retaliation against Plaintiff.

d.    That Defendant be ordered to pay all of Plaintiff's cost of litigation, including reasonable attorney's fees and costs for this action, including

such attorney's fees and costs that he incurred in the processing and litigating of the administrative complaints filed in this matter; and

e.     That Defendant be ordered to restore Plaintiff's psychiatric privileges and reinstate him to his appropriate position and duties, and to a work schedule that maximizes patients' health and safety.

f.     That this Court order any other relief that it deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all matters raised herein.

Respectfully submitted,

Steven J. Silverberg
District of Columbia Bar No. 377376
*Pro Hac Vice*
1400 K Street, N.W.
Suite 1000
Washington, D.C. 20005
Tel: (202) 785-8499
Fax: (202) 408-5070
Attorney for Plaintiff

-19-

Mark Jenkinson
West Virginia Bar No. 5215
Burke, Schultz, Harman and Jenkinson
85 Aikens Center
Martinsburg, West Virginia 25401
Tel: (304) 263-0900
Fax: (304) 267-0469
Local Counsel for Plaintiff